## Case No. 7,191.

### The JAMES A. WRIGHT.

[10 Blatchf. 160.] [1]

Circuit Court, S. D. New York.    Sept. 23, 1872. [2]

Oliver P. Buel, for libellants.

Dennis McMahon, for claimant.

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 7,190.]

WOODRUFF, Circuit Judge. These two appeals were heard together, as they were tried below [Case No. 7,190], upon like pleadings, and upon the same proofs, and the decision of the one necessarily determines the right of recovery in the other. The libellants in the first case were the owners of a cargo of coal, laden on board the canal boat or barge called the Arctic, and the libellant in the second case was the owner of the barge itself. The libels allege, that, on or about the 27th of December, 1867, the barge, having the coal on board, was lying at Newburgh, in a safe and convenient place, and that the steam tug James A. Wright, by its agents and servants, against the wish of the libellants, and without authority, although forbidden to do so, took the said barge, with her cargo, away from Newburgh, and attempted to tow her to New York; and that, in doing so, the said barge, and her said cargo, by the fault, negligence, and want of care of those on the said tug, became wholly lost to the libellants. The steam tug having, on the filing of the libels, been attached, and the monition having been served, Silas A. Dakin, alleging himself to be sole owner, appeared and claimed the steam tug. He, with James T. Easton and James McMahon, gave a bond for the value of the tug, and she was released from custody, and was afterwards sold and sent from the United States. Dakin, as claimant, put in answers to the libels. The answers do not deny the total loss of the barge Arctic and her cargo, but deny that the barge was taken in tow against the will of the libellants, or without authority, and deny that they were "lost to the said libellants by the fault, negligence, and want of care of the persons on the tug, but aver that the same were lost in the manner set forth in the answer," which is, in substance, as follows: That, on the 27th of December, 1867, the master and person in command. and who exercised control over the navigation, of the barge, desired to have her towed by the claimant; that the claimant endeavored to dissuade him from so doing, by informing him of the danger of the navigation; that such master made fast his line to another barge there lying. ready to be·towed by the Wright, and, notwithstanding the claimant told him he would not tow him, and told him to take off his line, persisted, declaring that, as the claimant had agreed to tow him down, he would not take off his line; that the claimant thereupon told him, that, if he persisted in holding on to the tow, he must understand that the claimant would not be responsible for his boat and cargo, but that he must take all the chances and risk of the ice in the river; that, after this, the claimant told him to take off his line and make it fast to the dock, but the said master refused to fasten his line to the dock, and said he would take all the risk of ice in the river; that the claimant proceeded in his voyage most care-

fully, feeling his way through the ice; and that the Arctic lightly struck a field or piece of ice, which caused her to leak some, and, not having a proper pump, she slowly filled, and, although every effort was made to save her, on the part of the claimant, she sank in the flat of the river.

About one year after the answer was put in, Dakin, the claimant, died. No notice was taken of his death, and the cause was thereafter, in March, 1869, brought to trial, at which the proctors and counsel for the claimant attended. Proofs were taken at great length, on both sides. The fact of the death of the claimant was not called to the attention of the court, nor was any question made that the cause did not proceed legally and regularly to the decree, which adjudged the tugboat liable, and directed a reference to compute damages. On the coming in of the report, exceptions thereto being argued, a final decree was entered. Thereupon, the proctors of the claimant gave the usual notice, declaring that the "claimant" thereby appealed to the circuit court, &c.; and the former stipulators, Easton and McMahon, gave the usual bond for the damages and costs, to stay the proceedings. In all this, no notice was taken of the death of Dakin, though it is apparent, from the record, that it was known to his proctors; and it now further appears, that, during the pendency of the suit in the district court, and until after the final decree therein, there were no letters of administration on his estate taken out.

On the appeal to this court, the suit was again brought to trial, and has been fully heard, counsel appearing professedly for the claimant, as appellant, and counsel for the libellants.

(1.) The point first to be considered, now, on this appeal, urged, as ground for reversing the decree of the district court, is, that, by the death of the claimant, the suit abated, and that it was error to proceed therein to a final decree, without calling in the representatives of the deceased. On that subject, I must follow the declaration of the supreme court, in Penhallow v. Doane's Adm'r, 3 Dall. [3 U. S.] 54, that, in proceedings in rem, in admiralty, the death of a claimant does not abate the suit, nor render a subsequent decree therein erroneous. I deem it unnecessary, after that declaration, to discuss the question at length, but, numerous cases relating to the nature of such proceedings, and their conclusiveness as to all persons who do not intervene for the protection of their interest in the rem proceeded against, and relating to the substituted security which, when a discharge of the attached vessel is obtained, stands in court in lieu thereof, tend to the same conclusion. The vessel is the defendant. All the world must take notice, at their peril, that condemnation is sought. All having an interest may intervene, and if, by death, or otherwise, an interest is transmitted or devolved upon persons not previously entitled to intervene, it is for them to protect their own interest, by applying to the court for that purpose. The libellant should not be affected by their neglect. There is no more reason why he should take notice of a change of interest, than that he should originally have made the owner of the vessel a party to the suit. Until some counter utterance from the supreme court, I must hold, that the libellants rightfully proceeded to trial and decree, and that therein is no error. It was suggested, that the decision referred to was made prior to the act of September 24, 1789, and that that act (1 Stat. 90, § 31) establishes a different rule. Not so. The section referred to does not at all relate to or affect suits in admiralty, and the court, in the case cited, plainly announce a general rule, applicable to such suits.

I do not, however, think it clear, that the appeal to this court was properly brought. In that, the deceased claimant is put forward as an actor, seeking the aid of this court, to avoid the decree of the district court. Had the libellants seen fit to move this court to dismiss the ostensible appeal, the question would have been presented; and, if the argument now urged by the proctor for the deceased has any force, it might, perhaps, have resulted in dismissing the proceeding from this court, and in leaving the decree as it now stands in the district court. Whether a deceased claimant can appeal, is a question that has not been argued, and is now not material, except perhaps to determine whether this court ought to examine the case on the merits, or dispose of the matter without such examination.

(2.) Notwithstanding the question last above suggested, I have thought it probable, that, in any event, the parties in interest would desire to know my conclusions upon the other questions raised, which include the merits of the controversy. Those conclusions are:

1st. That Dodge, the alleged master of the barge Arctic, had been discharged, had no authority to employ the tug boat, and could give to her owners no warrant or excuse for removing the barge from the place of safety where she lay. Notwithstanding his testimony, the direct testimony in contradiction, and his own conduct and admission, satisfy me that no such authority was given him.

2d. That Dakin, the master of the tug, was informed of the want of authority in Dodge, and was notified by the person to whose care the barge had been committed, not to remove her. Had there, therefore, been any apparent authority in Dodge, arising from the facts that he had once had control of the barge, and then occupied her cabin as a sleeping room (of which facts, however, it does not appear that the master of the tug had any knowledge), the notice

given was enough to put the master of the tug to enquiry, and, when he accepted the declaration of Dodge, and bargained with him to tow the barge, he acted at his peril.

3d. Taking the authority of Dodge to have been given him in the very terms stated by him; on which the counsel for the nominal appellant relies, it did not warrant the extraordinary agreement which it is alleged was made. Without dwelling on what is claimed by the owners to be a most exorbitant and unreasonable stipulation as to the price·for the towage, he was not authorized to relieve the tug-boat from the rules of towage, nor had the master of. the tug any ground for the assumption that he had any such authority.

4th. Independent of the question of negligence, in towing the barge into a field of ice, and subjecting her to injury, without any care, painstaking or precaution at the time of her greatest peril, it is not shown that it was necessary to leave her, where she was left after she received her injury, to drift off and become a total loss.

5th. There is nothing in the claim made, on this appeal, that the libellants were bound to make further efforts to find and raise the barge. Some of the testimony which appears in the case may not have been admissible, had objection been made, but enough appears, I think, to establish a total loss. If there was less proof, it is not material, since, as already stated, a total loss is alleged in the libels, and is not only not denied, but the terms of the answers quite plainly admit it.

6th. Upon the conflicting evidence in regard to the value of the barge, there is no sufficient ground for saying that the commissioner's report is not warranted by the proofs. There were estimates of her value greatly in excess of the amount reported, and there were some that were greatly less. It is not a case in which his conclusion from all the testimony should be disturbed.

Upon the merits, I have no hesitation in saying that the decree of condemnation was proper, and that the libellants are entitled to a like decree in this court, awarding them the amount of such decree, with interest and costs, unless counsel desire to be heard on the question, above suggested, whether the appeal to this court ought not to be dismissed. Had the attention of the district court been called to the fact that Dakin, one of the bondsmen on whose stipulation for value the vessel was released, had died, that court would, probably, have ordered summary judgment against the survivors only. The decree is, probably, invalid as to the deceased, and, if so, was not prejudicial to any one. The survivors, certainly, are not prejudiced thereby. But, the summary judgment in this court should contain a suggestion of the death of Dakin, and be entered against the other stipulators.